IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL J. RIEK )
              Plaintiff, )
     v. ) 1:08CV117
)
XPLORE-TECH SERVICES PRIVATE )
LIMITED, PANKAJ DHANUKA, )
KISHORE SARAOGI, and HELP DESK )
NOW, INC. )
)
              Defendants. )

## MEMORANDUM OPINION

BEATY, Chief District Judge.

This matter comes before the Court pursuant to Defendants Xplore-Tech Services Private Limited ("Xplore-Tech"), Pankaj Dhanuka ("Dhanuka"), Kishore Saraogi ("Saraogi"), and Help Desk NOW, Inc.'s ("Help Desk") (collectively "Defendants") Motion to Compel Arbitration [Document #12] and Motion to Stay Litigation [Document #13]. Plaintiff Michael J. Riek ("Riek") has filed a response in opposition to Defendants' motions. The issues here have been fully briefed and the Court will address the merits of the motions. For the reasons that follow, Defendants' Motion to Compel Arbitration is granted in part and denied in part, and Defendants' Motion to Stay the Litigation is denied.

## I. BACKGROUND

Plaintiff Riek was previously president of Defendant Help Desk, and a shareholder of its parent company DP Solutions, Inc. ("DP Solutions"), both of which are North Carolina companies. On October 5, 2004, Riek made a loan in the amount of $13,000 to Help Desk. Thereafter, on April 12, 2007, Xplore-Tech, a foreign corporation with its principal place of

business in India, purchased Help Desk from DP Solutions pursuant to a Share Purchase Agreement ("Purchase Agreement") signed by DP Solutions and Xplore-Tech. As consideration for sole ownership of Help Desk, Xplore-Tech agreed to assume Help Desk's then existing liabilities, including, as Riek contends, his loan to Help Desk. The Purchase Agreement, however, capped Xplore-Tech's assumption of liability at $4,500,000, with any excess liability to be borne by DP Solutions. In addition, the Purchase Agreement contains an arbitration provision which requires any claim, dispute, or controversy arising out of or in relation to the Purchase Agreement to be submitted to arbitration at the request of any party to the agreement.

On April 23, 2007, shortly after the Purchase Agreement was signed, Defendants Dhanuka and Saraogi, both principals of Xplore-Tech, executed a "Personal Guarantee to DP Solutions and its Shareholders Who are Owed Money by Help Desk as of March 31, 2007" ("Personal Guarantee"). This document personally guaranteed that the balance owed to DP Solutions and some of its shareholders that had loaned money to Help Desk, including Riek, as he contends, would be paid as represented in the Purchase Agreement. Moreover, in the event that the amounts as agreed in the Purchase Agreement were not paid to Help Desk's creditors by either Help Desk or Xplore-Tech, Dhanuka and Saraogi agreed to personally pay the amounts owed.

Subsequent to the execution of the Purchase Agreement, a dispute arose among the parties regarding the amount of liability Xplore-Tech assumed pursuant to the agreement. Riek then made demands on Xplore-Tech, Dhanuka, and Saraogi for repayment of the $13,000 loan that Riek made to Help Desk in 2004. Having not received repayment for the loan, Riek filed

a Complaint against Xplore-Tech, Dhanuka, and Saraogi in the Superior Court of Guilford County on January 30, 2008, asserting claims for, inter alia, repayment of the loan. The action was subsequently removed to federal court on the basis of diversity jurisdiction. On March 10, 2008, Riek filed an Amended Complaint which added Help Desk as a defendant and modified his other claims. Riek's Second Claim for Relief of the Amended Complaint, which is the subject of the instant motion before the Court, seeks repayment of the $13,000 loan from Xplore-Tech pursuant to the terms of the Purchase Agreement, and from Dhanuka and Saraogi pursuant to the terms of their Personal Guarantee. Xplore-Tech denies that it is liable for this loan amount based on the terms of the Purchase Agreement. In response to the Amended Complaint, Defendants Xplore-Tech, Dhanuka, and Saraogi filed a Motion to Compel Arbitration of Riek's Second Claim for Repayment of the Loan on the basis that the claim relates to and arises out of the Purchase Agreement. In addition, Defendants filed a Motion to Stay the Litigation as to the Second Claim, pending the outcome of arbitration, if granted. Riek opposes both of Defendants' motions contending that as a non-signatory to the Purchase Agreement he is not bound to the arbitration provision contained therein. Riek also requests that if the Court grants Defendants' motion to compel, he should be permitted to proceed with the litigation of his Second Claim against Dhanuka and Saraogi. The issues have been fully briefed by the parties and this matter is now ripe for the Court's consideration.

## II. DISCUSSION

### A. Defendants' Motion to Compel Arbitration of Riek's Second Claim for Repayment of the Loan

Turning first to the Motion to Compel Arbitration, the Court notes that Defendants

3

Xplore-Tech, Dhanuka, and Saraogi seek to compel Riek to arbitrate only his Second Claim for relief, which relates to repayment of the loan that Riek originally made to Help Desk.[1] However, the Court further notes that Riek's Second Claim for relief actually asserts two distinct avenues for recovery of the loan amount, each of which comprises a separate claim. Specifically, Riek seeks repayment of the loan amount (1) from Xplore-Tech pursuant to the Purchase Agreement, and (2) from Dhanuka and Saraogi pursuant to their Personal Guarantee. The Court will address in turn whether either one of these claims is subject to arbitration.

### i. Riek's Claim Against Xplore-Tech

Under the first part of the Second Claim for relief, Riek seeks recovery of the $13,000 loan amount from Xplore-Tech pursuant to Xplore-Tech's purported agreement to assume repayment for the loan under the terms of the Purchase Agreement. In the present Motion to Compel Arbitration, Xplore-Tech contends that based on the terms of the arbitration provision contained within the Purchase Agreement and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Riek must proceed with his claim in arbitration. In this regard, the Court will address the applicable legal standards to determine whether the parties should be referred to arbitration.

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), 3 U.S.T. 2517, T.I.A.S. No. 6957, 330 U.N.T.S. 38 (1970), is implemented and enforced in the United States by the Federal Arbitration Act, 9 U.S.C. §§ 1-307 (1999). In the

---

[1] Riek's First Claim for relief relates to an alleged breach of an employment contract between Riek and Xplore-Tech, and Defendants do not contend that there is any basis to require arbitration of that claim.

4

United States, "[t]here is a strong federal policy in favor of arbitration, and the Arbitration Act calls for the enforcement of valid arbitration agreements." In re White Mountain Mining Co., 403 F.3d 164, 169 (4th Cir. 2005) (citing 9 U.S.C. § 201; Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1985)) (internal citation omitted). Moreover, "[t]his federal policy applies with special force in the field of international commerce because the United States has acceded to the Convention." Id. (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)) (internal quotation and citation omitted). The Convention would apply to arbitration in this case because Xplore-Tech, one of the parties to the arbitration agreement, is a foreign corporation whose principals are residents of India. See id. (citing 9 U.S.C. § 202). The Convention provides that "[t]he court of a Contracting State . . . shall, at the request of one of the parties [to an arbitration agreement], refer the parties to arbitration unless it finds that the said agreement is null and void, inoperative, or incapable of being performed." Convention, art. II, para. 3. However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416 (4th Cir. 2000) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)); see also Southern Spindle & Flyer Co. v. Milliken & Co., 53 N.C. App. 785, 788, 281 S.E.2d 734, 736 (Ct. App. 1981) (noting that under contract law, the party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes).

In this case, Xplore-Tech seeks to compel Riek to arbitrate his Second Claim for

repayment of the loan pursuant to the arbitration provision of the Purchase Agreement between DP Solutions and Xplore-Tech.[2] Specifically, Defendants contend that although Riek is a non-signatory to the Purchase Agreement, he nevertheless should be compelled to arbitrate his Second Claim against Xplore-Tech because the claim falls within the scope of the arbitration agreement in that it arises out of and is contingent upon interpreting the Purchase Agreement. Defendants further contend that Riek should be compelled to arbitrate his claim against Xplore-Tech because by seeking repayment of the loan from Xplore-Tech, Riek seeks to enforce the terms of the Purchase Agreement. Riek, however, contends that because he did not sign the Purchase Agreement containing the arbitration provision, he is not bound by the arbitration

---

[2] In its entirety, the arbitration provision states:

11.2   Dispute Resolution

(a)   The Parties shall make endeavours to settle by mutual conciliation any claim, dispute, or controversy ("Dispute") arising out of, or in relation to, this Agreement, including any Dispute with respect to the existence or validity hereof, the interpretation hereof, the activities performed hereunder, or the breach hereof.

(b)   Any Dispute which cannot be settled within 20 days of consultation, shall be submitted to arbitration at the request of any Party upon written notice to that effect to the other party and such arbitration shall be conducted in accordance with rules of the International Arbitration Association by a panel consisting of three (3) arbitrators.

(c)   The Seller and the Purchaser shall appoint one arbitrator each, who shall jointly appoint a third arbitrator.

(d)   The language of the arbitration shall be English. The venue of the arbitration shall be Washington, DC.

(e)   The parties agree that the award of the arbitrators shall be final and binding upon the Parties.

provision and thus has no obligation to arbitrate his claim. Riek further contends that as a loaner of money to Help Desk, he did not give consent to arbitrate claims for repayment of the loan, and therefore he did not enter into a valid agreement to arbitrate disputes with Help Desk, nor with any of the other Defendants. The Court notes that the arbitration provision of the Purchase Agreement explicitly applies to disputes between the "Parties," who are defined in the agreement as the Seller, DP Solutions, and the Purchaser, Xplore-Tech. The Court further notes that while Xplore-Tech is a "Party" to whom the arbitration provision applies, Riek is neither a signatory to the Purchase Agreement nor a "Party" to the arbitration provision contained therein. Nevertheless, while a mutual agreement to arbitrate disputes must be shown in the case of two parties to a contract, that scenario is not at issue in this case. In this case, both Riek and Xplore-Tech are attempting to enforce provisions of a contract to which Riek is a third-party beneficiary. In this regard, the legal standards that apply include a third-party's right to enforce a contract to which he is a stranger, and the ability of a signatory to a contract containing an arbitration provision to enforce that provision against a non-signatory.

"The rule is well established in this jurisdiction that a third person may sue to enforce a binding contract or promise made for his benefit even though he is a stranger both to the contract and to the consideration." Carl v. State, 665 S.E.2d 787, 794 (N.C. Ct. App. 2008) (quoting American Trust Co. v. Catawba Sales & Processing Co., 242 N.C. 370, 379, 88 S.E.2d 233, 239 (1955)) (quotation marks omitted). "[A] person may bring an action to enforce a contract to which he is not a party, if he demonstrates that the contracting parties intended primarily and directly to benefit him or the class of persons to which he belongs." DeMent v.

7

Nationwide Mut. Ins. Co., 142 N.C. App. 598, 604, 544 S.E.2d 797, 801 (Ct. App. 2001). "The intent of the parties is ascertained by construction of the terms of the contract as a whole, construed in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish." Id. (quoting Chem. Realty Corp. v. Home Fed. Sav. & Loan, 84 N.C. App. 27, 33, 351 S.E.2d 786, 790 (Ct. App. 1987)). Thus, where a corporation, in purchasing the assets of another corporation from receivers, agrees to assume the liabilities of the receivers in connection with the operation of the business, such agreement constitutes a contract for the benefit of creditors and they may sue upon the contract as third-party beneficiaries. See Canestrino v. Powell, 231 N.C. 190, 195, 56 S.E.2d 566, 569 (1949).

In this case, Xplore-Tech and DP Solutions executed a Purchase Agreement by which Xplore-Tech purchased Help Desk from DP Solutions. In purchasing the assets of Help Desk, Xplore-Tech agreed to assume the liabilities of Help Desk up to a certain dollar amount as indicated in the Purchase Agreement. Pursuant to the payment provision of the Purchase Agreement, Xplore-Tech agreed to pay specified amounts to the Seller (DP Solutions) and other creditors to pay off the loans and liabilities of Help Desk. These terms of the Purchase Agreement make it evident that Xplore-Tech and DP Solutions in contracting the sale of Help Desk, intended to primarily and directly benefit creditors such as Riek. This type of agreement constitutes a contract for the benefit of creditors, and these credit beneficiaries may sue to enforce the provisions of the contract as third-party beneficiaries. See Canestrino, 231 N.C. at 195, 56 S.E.2d at 569. Therefore, because the facts here demonstrate that the contracting parties, Xplore-Tech and DP Solutions, intended to benefit creditors such as Riek, the Court

finds that Riek, as a third-party beneficiary to the Purchase Agreement, may enforce the promises made therein for his benefit even though he is a stranger to the contract. See DeMent, 142 N.C. App. at 604, 544 S.E.2d at 801 ("[A] person may bring an action to enforce a contract to which he is not a party, if he demonstrates that the contracting parties intended primarily and directly to benefit him or the class of persons to which he belongs."). Having found that Riek may properly sue to enforce the terms of the Purchase Agreement, the Court must examine whether Xplore-Tech likewise may enforce the arbitration provision of the Purchase Agreement against Riek.

The Fourth Circuit has held that "[w]hile a contract cannot bind parties to arbitrate disputes they have not agreed to arbitrate, it does not follow . . . that under the [Federal Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision." Int'l Paper, 206 F.3d at 416. "Well-established common law principles dictate that in an appropriate case a non-signatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." Id. at 416-17. An appropriate case for enforcement is under a theory of equitable estoppel. See id. at 417; Am. Bankers Ins. Group, Inc. v. Long, 453 F.3d 623 (4th Cir. 2006); Brantley v. Republic Mortg. Ins. Co., 424 F.3d 392 (4th Cir. 2005); R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, 384 F.3d 157 (4th Cir. 2004). "In the arbitration context, the doctrine [of equitable estoppel] recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." Int'l Paper, 206

9

F.3d at 418; see also Am. Bankers Ins. Group, 453 F.3d at 627 (noting that "[t]he legal principle [underlying the theory of equitable estoppel] rests on a simple proposition: it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage") (internal quotation and citation omitted). The test for determining when equitable estoppel applies against a non-signatory who sues a signatory to an arbitration provision states that "a non-signatory will be estopped when his underlying claims seek a 'direct benefit' from the contract containing the arbitration clause." Am. Bankers Ins. Group, 453 F.3d at 628. The "direct benefit" test "recognizes that a non-signatory should be estopped from denying that it is bound by an arbitration clause when its claims against the signatory arise from the contract containing the arbitration clause." Id.

In this case, Riek seeks to enforce certain provisions of the Purchase Agreement in asserting his claim for repayment, in that he contends that Xplore-Tech agreed to assume the liabilities of Help Desk, including the repayment of the loan to Help Desk from Riek. Xplore-Tech, however, invokes the doctrine of equitable estoppel, in substance, by arguing that by seeking repayment of the loan from Xplore-Tech, Riek seeks to enforce the terms of the Purchase Agreement and is thus bound by the arbitration provision contained in the Purchase Agreement. The Court notes that Riek's Second Claim for repayment seeks a direct benefit from the Purchase Agreement in that Riek contends that "[p]ursuant to the Share Purchase Agreement between [Xplore-Tech] and [DP Solutions], dated April 12, 2007, Xplore-Tech assumed the Loan and promised to repay it." (First Am. Compl. at 3 [Document #8].) As a result, the Court affirmatively finds that Riek's Second Claim for relief, to the extent it is asserted

10

against Xplore-Tech, arises from the Purchase Agreement. Under the principles of equitable estoppel Riek cannot now avoid the arbitration provision of the Purchase Agreement and at the same time enforce another contract provision that operates to his benefit. See Int'l Paper, 206 F.3d at 418 (noting that "a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him"). The Court finds that the facts in this case meet the test for equitable estoppel because Riek's Second Claim against Xplore-Tech arises out of the Purchase agreement and because Riek, in pursuing his claim, seeks a direct benefit from the Purchase Agreement. See Am. Bankers Ins. Group, 453 F.3d at 628 ("equitable estoppel applies against a non-signatory who sues a signatory to an arbitration provision [when] . . . his underlying claims seek a "direct benefit" from the contract containing the arbitration clause"). Having found that equitable estoppel applies in this case, the Court concludes that Riek is estopped from denying that he is bound by the arbitration provision of the Purchase Agreement, and therefore Riek may only pursue his Second Claim for repayment of the loan to the extent it is asserted against Xplore-Tech in arbitration.

Having concluded that Riek is under an obligation to arbitrate his Second Claim against Xplore-Tech, the Court notes that Riek contends that in any event, the arbitration provision in the Purchase Agreement is unconscionable and may be voided by the Court. Specifically, Riek contends that Xplore-Tech cannot bind him to an international arbitration agreement that would make enforcement of the loan repayment prohibitively expensive. In examining Riek's

11

contention, the Court turns to the applicable legal standards for evaluating the enforceability of arbitration agreements.

The Federal Arbitration Act contemplates that "equity may require invalidation of an arbitration agreement that is unconscionable." Murray v. UFCW Int'l, Local 400, 289 F.3d 297, 302 (4th Cir. 2002). The grounds for invalidation, however, must relate specifically to the arbitration clause and not just to the contract as a whole. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402-04, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). "Unconscionability is a narrow doctrine whereby the challenged [agreement] must be one which no reasonable person would enter into, and the inequality must be so gross as to shock the conscience." Sydnor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 305 (4th Cir. 2001) (internal quotation and citation omitted). With regard to expenses making an arbitration agreement unenforceable, "the party seeking to avoid arbitration must prove that arbitration would be prohibitively expensive." Id. at 306 (quoting Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 92, 121 S. Ct. 513, 522, 148 L. Ed. 2d 373 (2000)).

In this case, while Riek contends that this "international arbitration agreement" would make enforcement of his loan repayment prohibitively expensive, Riek has presented no evidence for the Court to consider in making a determination as to whether arbitration in this instance is prohibitively expensive. See Sydnor, 252 F.3d at 305 ("party seeking to avoid arbitration must prove that arbitration would be prohibitively expensive"). Moreover, to the extent that Riek contends that the international nature of the Purchase Agreement might be prohibitively expensive, the Court notes that the chosen venue for arbitration is Washington,

DC, which is not an international location for Riek, who is a resident of North Carolina. In addition, Riek has presented no evidence to show that the arbitration agreement is otherwise unreasonable or so grossly unequal to warrant a finding of unconscionability. See id. (noting that to be unconscionable, an agreement must be one which no reasonable person would enter into, and so grossly unequal as to shock the conscience"). Therefore, because Riek has not demonstrated that the arbitration provision in the Purchase Agreement is unconscionable in any manner, the Court declines to invalidate the arbitration provision on this ground. Having concluded that Riek is under an obligation to arbitrate his Second Claim for relief, to the extent that it is asserted against Xplore-Tech, and having further concluded that the arbitration provision is otherwise enforceable, the Court will grant Defendants' Motion to Compel Arbitration with respect to Riek's Second Claim for relief against Xplore-Tech.

### ii. Riek's Claim Against Dhanuka and Saraogi

With respect to the second part of the Second Claim for relief, Riek seeks repayment of the $13,000 loan from Dhanuka and Saraogi pursuant the Personal Guarantee executed by these two Defendants on April 23, 2007. Dhanuka and Saraogi, however, move to compel arbitration of this claim contending that based on the terms of the arbitration provision contained within the Purchase Agreement, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Riek may only proceed with his claim in arbitration. In this case, Riek asserts his claim for repayment against Dhanuka and Saraogi pursuant to the Personal Guarantee, and not the Purchase Agreement which contains the arbitration provision. Riek contends that the Personal Guarantee executed by Dhanuka and Saraogi renders the two of them "unconditional"

13

guarantors of the loan, and that the Personal Guarantee is absolute and independent from any obligation that Xplore-Tech may have to repay the loan. Riek further argues that the Personal Guarantee expressly states that the forum for collection is in a United States court.

The Court notes that the terms of the Personal Guarantee state that Dhanuka and Saraogi "personally guarantee that [a specified amount] that is of this date still owed to [DP Solutions] and some of its shareholders that have loaned money to Help Desk will be paid as presented in the Share Purchase Agreement between Xplore-Tech and DP Solutions. . . . . If for any reason the [specified amounts] . . . are not paid [according to the schedule in the Purchase Agreement] by either Help Desk or Xplore-Tech, Dhanuka and Saraogi will personally pay the amount(s) owed within 15 days of the dates that such unpaid amounts were to have been paid." (Personal Guarantee of Pankaj Dhanuka and Kishore Saraogi at 1 [Document #1].) The Personal Guarantee further states that "in the event of default in paying the amounts due when they become due as per the Purchase Agreement . . . [DP Solutions] and its Shareholders that are owed money by Help Desk may seek payment directly from [Dhanuka] and [Saraogi]." (Id.) The Court notes that although the Personal Guarantee makes reference to the Purchase Agreement, it does so only with regard to the schedule for repayment of loans owed to the shareholders. The Court further notes that reference to the Purchase Agreement merely indicates the point in time at which Dhanuka and Saraogi's obligations mature, and the substantive terms of the Personal Guarantee are independent from those of the Purchase Agreement. See SGML Corp. v. Bank of North Carolina, N.A., 41 N.C. App. 28, 36, 254 S.E.2d 274, 279 (Ct. App. 1979) (noting that a guaranty is an independent contractual relationship by

14

Case 1:08-cv-00117-JAB-PTS   Document 22   Filed 03/31/09   Page 14 of 17

one person to answer for the debt of another, whereby the guarantor becomes primarily liable upon default of another's debt); Arcade Farms Milling Co. v. Wallace, 242 N.C. 686, 689, 89 S.E.2d 413, 415 (1955) (noting that a guarantor's obligation rests on the guaranty rather than the underlying obligation). The Court finds that the Personal Guarantee executed by Dhanuka and Saraogi for the benefit of DP Solutions shareholders like Riek, is an independent obligation created separate and apart from the Purchase Agreement. The Court further finds that estoppel is not appropriate in this instance because Riek's claim against Dhanuka and Saraogi for recovery under the Personal Guarantee is a claim related to Riek's independent contractual relationship with Dhanuka and Saraogi, and is not a claim that arises out of and directly relates to the terms of the Purchase Agreement between Xplore-Tech and DP Solutions. See Arcade Farms Milling Co., 242 N.C. at 689, 89 S.E.2d at 415 (a guarantor's obligations rest on the guaranty rather than the underlying obligation).[3] Moreover, the Court notes that the terms of the Personal Guarantee

---

[3] Dhanuka and Saraogi argue that although Riek is a non-signatory to the Purchase Agreement, he nevertheless should be compelled to arbitrate his Second Claim against Dhanuka and Saraogi because the claim arises out of and is contingent upon interpreting the Purchase Agreement. As noted above, the Court recognizes that in the appropriate circumstance, under a theory of equitable estoppel, "a non-signatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." Int'l Paper, 206 F.3d at 416-17. To the extent that a non-signatory seeks to compel arbitration of another non-signatory's claims, the party seeking to compel arbitration must demonstrate that the party seeking to avoid arbitration relies on the contract containing the arbitration provision in pursuing his claim. See Am. Bankers Ins. Group, 453 F.3d at 628 (noting that Brantley's "rely on" legal test is appropriate where a non-signatory plaintiff attempts to avoid arbitration). The "rely on" test provides that "equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims against the non-signatory. When each of a signatory's claims against a non-signatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." Brantley, 424 F.3d at 395-96. Because the Second Claim for relief, to the extent that it is asserted against Dhanuka and Saraogi, relies on the Personal Guarantee, and not the Purchase Agreement, equitable estoppel

15

provide that "[t]his unconditional personal guarantee from both individuals, if necessary, may be enforced in the courts of the U.S., or India or both the U.S. and India, if necessary." (Personal Guarantee at 1). Thus, the Court finds that arbitration is not required under the terms of the Personal Guarantee given that the terms of the Personal Guarantee make no mention of arbitration but instead prescribe litigation as the appropriate forum for recovery. Having found that equitable estoppel does not apply in the case, and that the proper forum for pursuing collection under the Personal Guarantee is the court, the Court concludes that Riek's Second Claim for repayment of the loan against Dhanuka and Saraogi will not be referred to arbitration. Therefore, the Court will deny Defendants' Motion to Compel Arbitration of Riek's Second Claim for repayment of the loan against Dhanuka and Saraogi.

**B. Defendants' Motion to Stay**

In connection with Defendants' Motion to Compel Arbitration, Defendants also move to stay the litigation as to the Second Claim pending the outcome of arbitration if granted. However, in response, Riek has requested that if the Court grants Defendants' Motion to Compel Arbitration with respect to his claim against Xplore-Tech, that instead of allowing Defendants' Motion to Stay, the Court would, pursuant to his request, dismiss Riek's claim against Xplore-Tech and thereby allow him to proceed with his Second Claim only to the extent it is asserted against Dhanuka and Saraogi. As discussed above, the Court has concluded that the Motion to Compel Arbitration should be allowed as to Riek's Second Claim as against Xplore-Tech. Therefore, this Second Claim against Xplore-Tech will be referred to arbitration

---

would not apply to this claim.

and will be dismissed from the present suit. The Court further concludes that, having dismissed Riek's Second Claim as against Xplore-Tech that is subject to arbitration, there is no basis to stay the Second Claim as against Dhanuka and Saraogi which is not subject to arbitration. Therefore, the Court will deny Defendants' Motion to Stay Litigation of the Second Claim as against Defendants Dhanuka and Saraogi.

## III. CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that Defendants' Motion to Compel Arbitration [Document #12] is GRANTED with respect to Plaintiff's Second Claim against Defendant Xplore-Tech Services Private Limited, and DENIED with respect to Plaintiff's Second Claim against Defendants Pankaj Dhanuka and Kishore Saraogi. IT IS THEREFORE ORDERED that Plaintiff's Second Claim, to the extent it is asserted against Defendant Xplore-Tech Services Private Limited, is REFERRED TO ARBITRATION pursuant to the arbitration provision of the Purchase Agreement, and this Second Claim against Defendant Xplore-Tech Services Private Limited is therefore DISMISSED from the present suit. IT IS FURTHER ORDERED that Defendants' Motion to Stay the Litigation as to Riek's Second Claim against Defendants Dhanuka and Saraogi [Document #13] is DENIED.

An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This, the 31 day of March, 2009.

Chief United States District Judge